### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHEN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | 1:23-cr-00460-JRA |
| | * | |
| WILLIE EARL JACKSON, | * | JUDGE JOHN R. ADAMS |
| | * | |
| Defendant. | * | |

### DEFENDANT'S SENTENCING MEMORANDUM

**COMES NOW** the Defendant, Willie Earl Jackson, (hereinafter "Defendant"), by and through Leif B. Christman, his undersigned counsel of record in this cause, and pursuant to Federal Rule of Criminal Procedure 32 and L. Cr. R. 32.2, respectfully submits the following Sentencing Memorandum inclusive of the significant issues for the Defendant's sentencing in this matter:

### INTRODUCTION

On August 23, 2023, the government filed a three-count Indictment, in which Defendant was named and charged in counts one and two. On December 19, 2023, Defendant pled guilty to counts one and two of the Indictment, which charged him with: Count 1) – Dealing in Firearms without a Federal Firearms License, pursuant to 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D); and Count 2) Trafficking in Firearms, pursuant to 18 U.S.C. §§ 933(a)(1) and 933(b).  Defendant Jackson has been in federal custody since August 10, 2023 and has not violated any pretrial detention requirements since being in custody. The instant matter contains no Rule 11 binding plea agreement in this case. In addition, the Government agrees to a three-level reduction for acceptance of responsibility. *See* PSR, ¶ 24-25, Page ID 101. Defendant is set for Sentencing by this Honorable Court on Tuesday, April 9, 2024 at 11:00 a.m.

**APPLICABLE STANDARD**

Since *United States v. Booker* 543 U.S. 220 (2005), it is now well established that the mandatory application of the United States Sentencing Guidelines is no longer the appropriate standard for sentencing purposes. As reminded more recently in *Irizarry v. United States*, 128 U.S. 2198, 2203 (2008) (citing *United States v. Vega-Santiago*), "[s]entencing is a fluid and dynamic process…" "The sentencing judge is in a superior position to find facts and judge their import under §3553 in the individual case…" *See Gall v. U.S.*, 552 U.S. 38 (2007)(quotations omitted). Moreover, "[i]t is has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue. *Gall*, 552 U.S. at 53 (quoting *Koon v. United States,* 518 U.S. 81, 113 (1996)).

**DEFENDANT'S SENTENCING POSITIONS**

**Defendant's Guideline Calculation**

Defendant's base offense level is a 12 pursuant to section 2K2.1(a)(7). Defendant Jackson sold a firearm to a person he had reason to believe had a prior felony offense. He also sold a firearm(s) with knowledge the same firearm(s) would be transported outside the United States, and the PSR reflects a series of enhancements (18) under §2K2.1. Defendant is not classified as a leader or organizer under 3B1.1 or CCE, and Defendant has acknowledged and accepted responsibility for his actions under these charges, which aids the Government in further prosecutions. Thus, this Court can reduce sentence accordingly.

Additionally, the Government agrees to a further reduction for acceptance of responsibility. Moreover, Defendant has accepted responsibility for his actions and should receive a three (3)

level reduction of his offense level under USSG 3E1.1(a) and (b). As a result, Defendant Jackson would have a total offense level of 27 in this matter.

**18 U.S.C. §3553 Factors**

Ever since the Supreme Court's decision in the *United States v. Booker*, 543 U.S. 220 (2005), the Federal Sentencing Guidelines have no longer been mandatory, but rather are advisory with respect to a District Court's decision in fashioning an appropriate sentence. The Guidelines are merely a "starting point and the initial benchmark" in the Court's search for an appropriate sentence. *Gall v. United States*, 552 U.S. 38 (2007). In *Kimbrough v. United States*, 128 S.Ct. 558 (2007), the Supreme Court pointed out that the Sentencing Reform Act, as modified by its decision in *Booker* "contains an overarching provision instructing District Courts to impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing." *Id*. at 570. This provision must be honored through reference to all of the factors set forth under 18 U.S.C. § 3553(a). As such, consideration of the Sentencing Guidelines is just but one factor for the Court to consider when exercising its tremendous discretion in determining the appropriate sentence.

Undoubtedly, the offense before the Court is a serious offense and Defendant has accepted responsibility for his involvement with same. *See* PSR ¶ 34, Page ID 443-44. Specifically, Mr. Jackson stated the following:

> *Your Honor,*
>
> *I accept full responsibility for my actions in this case. I acknowledge selling several firearms without a federal firearms license. I sold one of them to an individual who stated he had a prior felony and I also sold firearms to a customer who stated an intent to transport the firearms outside of the United States. I was warned previously that I needed to obtain my FFL if I wanted to continue selling firearms, even on an occasional basis. I looked into the process, but I didn't follow through. I had other full time employment opportunities and stopped selling firearms. I got back into the business last summer. While I knew what I was doing was illegal, I didn't realize the gravity of my actions. I have since learned that for the same conduct that resulted in my warning, I have the same offense level as*

3

> *someone selling 3.5 to 5 kilos of cocaine. I never would have sold another firearm without obtaining my license if I knew the severity engaging in this business without a license. I don't want this Honorable Court to take the above explanation as an excuse for my behavior, I believe that it's important to explain my mindset while I engaged in this conduct. I am truly remorseful for letting down all the people that have helped shaped my life. My parents, teachers, coaches, and people of faith have all help guide me from my childhood to the responsible man I've become. I'm 27 years old and have no prior juvenile or adult criminal record. I grew up knowing many people who didn't value their education and chose to embrace the street life. I have embraced the opportunities given to me and put in the hard work to earn my bachelor's degree while on full scholarship at the University of Toledo. I've given back to the community through my charity for children and volunteered my time coaching youth basketball. I was about to start employment as a teacher and counselor. Up until this point in my life, I have always been a positive example. When I am released from the BOP, I will rebuild my reputation in the community. I am coachable. I will embrace the uncertainty of my nearterm future and get back to setting the positive example that has become expected of me. I apologize to this Honorable Court, and to all of those in the community who I have disappointed by my actions*

*See* PSR ¶ 34, Page ID 443-44.

In reviewing the documentation provided in the Presentence Report, specifically, paragraph no. 34, it is clear that Defendant readily admitted his role as to the offense and did not attempt to obstruct justice in this matter. Additionally, Defendant attempts to maintain a degree of civility and to abide by the law. Moreover, it appears undisputed that, as the PSR reflects, Defendant has no pending charges, or ongoing criminal activity that jeopardizes society, the community, or his ability to make better decisions going forward. (*See* paragraphs no. 57 through 58 of the PSR Report, Page ID 446).

**§3553 Factors and Background**

What is more, the probation officer learned (*See* paragraphs 59-77) is that Defendant's circumstances and surroundings did not promote suitable growth, and the Defendant made poor decisions, which he hopes to have the opportunity to amend and be a good role model and father to his six (6) minor children.

It is revealed that Defendant's parents were never married, and his mother primarily raised the Defendant, along with his maternal grandparents. Defendant's father has a total of 14 children, of which Defendant is close to 5 of them. Defendant recalls in his youth he had the basic necessities, but did witness domestic violence when his mother dated other men. Tragically, Defendant also experienced the horrific murder of two of his loved ones – his father Paul Bradley and his sister. In 2018, Paul Bradley was beaten and set on fire, while his sister was shot in the head during a home-invasion robbery. (*See* paragraph no. 63 of the PSR Report, Page ID 447). Their deaths had a devasting effect on the family, especially Mr. Jackson.

Defendant's upbringing brought challenging circumstances. Although Defendant was staying with his maternal grandparents and mother, their surroundings exhibited a questionable outlook for Defendant. As a minor, Mr. Jackson never underwent mental health counseling and was not officially diagnosed with any psychological issues, despite the traumatic events of his youth. Mr. Jackson did see a psychologist when he attended university after the murders of Mr. Bradley and his sister.

In addition, Mr. Jackson also deals with physical challenges. As a standout basketball player, Mr. Jackson fractured his left foot while playing basketball. (*See* paragraph no. 67 of the PSR Report, Page ID 448). Defendant has primarily lived in Cleveland, Ohio with his mother, and later with his maternal grandparents when he was under their custody. Despite his troubled upbringing, Defendant got engaged recently and has been in a relationship since 2020 with Miss India Mills. Notably, Defendant has a good relationship with all of his siblings and his parents and grandparents. In short, Defendant is still able to do better and has made poor decisions but wants to be a better son and fiancé. Admittedly, he has had poor lapses in judgment, coupled with his tragic upbringing, but Mr. Jackson can do better. His life has been one where he has experienced

unfortunate circumstances and an injury has derailed his professional basketball career at this point, but these events do not hinder him from striving to do better and doing honest work. Such trauma can readily be understood, but sometimes untreated. His trauma has been painful, and his physical ailments continue to plague him; however, Defendant is also mindful as he continues to grow, he must be more resourceful and mindful that his actions have consequences. His current involvement with this instant offense, however, do not define him and he seeks to better his circumstances. He has started to change now. Mr. Jackson is willing to participate in psychological counseling to aid him in resolving and dealing with the tragic murders of his loved ones in 2018 to violence. (*See* paragraph no. 68 of the PSR Report, Page ID 448). In addition, Mr. Jackson also recalled the murders of three of his cousins to gun violence.

Defendant's history also reveals what is unfortunately often prevalent in cases before the Courts, in that he experienced and started using marijuana as a coping mechanism, and did so regularly with a medical marijuana card. (*See* paragraph no. 69 of the PSR Report, Page ID 448). While Defendant has no cognizable addiction or substance abuse toward any hard narcotics or alcohol, Defendant recognizes the need to "nip any questionable habits in the bud" to have a better future with his fiancé and family. Hence, Defendant would respectfully submit that much of his lapse in judgment may be attributable to his youth. Notably, Defendant has no criminal history and is not a threat to the general public. More specifically, Mr. Jackson has no prior criminal conduct, charges, or arrests. Defendant's use of medical marijuana, his various medical challenges, and his childhood (unresolved) trauma do not mix well. As a result, Defendant Jackson is amenable to doing other treatment and counseling programs.

Despite his lapses in judgment, Defendant had the wherewithal to complete high school and graduated from Garfield Heights High School in 2016. Subsequently, he matriculated to the

6

University of Missouri on a basketball scholarship, but then transferred to the University of Toledo. He graduated from college in 2020 with a bachelor's degree in psychology. (*See* Exhibit A – Transcripts). After college, Mr. Jackson played professional basketball in various leagues in the United States and overseas and made a salary. (*See* paragraph no. 73 of the PSR Report, Page ID 449). In 2022, he suffered a fractured foot, which paused his basketball career and returned home to Cleveland. Mr. Jackson eventually started a non-profit organization, <u>More Than Willie Jackson's Toy Foundation</u>, which provides toys and gift cards to underserved children. (*Id.*). Mr. Jackson has also held other steady employment with Cuyahoga County Juvenile Detention Center and the Garfield Heights Jail. In fact, prior to this instant matter, Mr. Jackson had an offer letter to provide mental health counseling and student support services at Holy Name Elementary School with a yearly salary of $33,000.00. (*See* paragraph no. 71 of the PSR Report, Page ID 448). He wants to learn and has a desire to work and provide for himself and his family. Considering this instant offense, which Defendant has accepted responsibility for, Defendant desires to return to society as a working man – to do an honest living.

      Finally, in terms of the circumstances of the instant offense, what is apparent is this arose from poor judgment from a man with no criminal history, and unresolved trauma, which by any measure, warrants substantial consideration. Defendant readily admitted to the offense charged and takes responsibility for his actions. Mr. Jackson is a diligent young man who made a mistake and seeks mercy from this Court.

      In light of the foregoing, Defendant requests that the Court consider Defendant's mitigating circumstances for the reasons cited herein and made during the Defendant's sentencing. While Defendant has made substantial strides, he still is mindful that his choices have consequences,

7

making the need for rehabilitation significant in this case. Defendant has further attempted to consider a different calling and path going forward.

Concluding, if given the opportunity, Defendant can correct his behavior and develop a plan to avoid a cyclical life of criminal conduct. Defendant's family, including his siblings, grandparents, and mother, particularly, can attest to Defendant's positive attributes and his amenability to correct his behavior and to do good things for society. In fact, others can attest to Mr. Jackson's ability to do better going forward.

**Community Support**

Toledo Head Basketball Coach, Tod Kowalczyk, writes in support of Mr. Jackson and described him as "a hard worker and a good kid" who positively affects everyone he meets with enthusiasm and energy. (*See* Collective Exhibit B – Letters of Support). A fellow member of the bar, Attorney Stacey E. Polk, writes in support of Mr. Jackson, indicating Mr. Jackson was a respectful, reliable, bright individual during his time at the University of Toledo, and continues to write that the lapse in judgment in the present matter is "inconsistent with who Willie is" and does not define him, but rather is a veering off of the direction he is supposed to go. Attorney Polk is confident if given the chance, he can regain control of his life and personally petitions this Court for its discretion for a minimum sentence be given onto Willie Jackson, as it will be to his benefit and for society's benefit. (*See* Collective Exhibit B – Letters of Support). Attorney Polk goes on to state the Court's leniency will be used for Willie to rebuild his life and contribute his experience with the community that needs him.

Another childhood friend and member of the bar, Attorney Tyler J. Walchanowicz, also spoke about how Willie was an accomplished basketball player, but also a bright, caring and giving man off the court. (*See* Collective Exhibit B – Letters of Support). Attorney Walchanowicz states

deep down, this case is not reflective of Willie's character, and knows his support systems comes from his family and those individuals he has touched. Lastly, Attorney Walchanowicz states he has spoken to Willie, and he feels shame and regret from his behavior in this instant matter, and he seeks the Court to consider this when sentencing Willie.

Marell Alan Harrell also writes in support of Mr. Jackson and she indicated Mr. Jackson is a very positive and influential man in the community and works hard to provide for the youth in his area. She says the instant matter makes no sense and is shocked by the charges because she has worked with Mr. Jackson and in so many enterprises and knows this is not the kind of person he is, and seeks this Court to show mercy because she knows the "true character of William Jackson."

Religious leader, Bishop Leo Ferguson and his wife, Roslyn Ferguson, of Sunrise Ministries, also write to support Mr. Jackson. They mentor Mr. Jackson and found the charges difficult to bear because they do not understand how he ended up in this situation. Nevertheless, they speak about his involvement in his nonprofit organization and the stress he was under playing professional basketball, which he, perhaps, saw a quick opportunity to help his family with a financial gap and took a serious risk that was not good. Bishop Ferguson and his wife believe if given a second chance, this young man can be remarkable, as they state, "God has a way of using us all and I know this will be part of Mr. Jackson's testimony." (*See* Collective Exhibit B – Letters of Support). They conclude by stating, "you have a good man standing in front of you that truly just made one bad mistake."

The letters of support issued on Mr. Jackson's behalf illustrate for this Court the man before you. Rhetorically, Mr. Jackson has made a mistake and he readily admitted and has accepted responsibility for his actions. This single mistake in his life does not define him, and he ask this Court to not define him by his one mistake, but rather see the man and his promise of redemption.

His determination, coupled with his rootedness in his family and his community support, supports a lenient sentence, as this Court will set and determine.

In summary, Defendant requests that if the Court is inclined to sentence Defendant to a period of incarceration, Defendant requests that this Court, as dictated in *United States v. Booker*, to impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing." *United States v. Booker*, 543 U.S. 220 (2005). He respectfully asks the Court to sentence him accordingly, taking into account all of the above factors, and those to be articulated at the hearing in this cause.

                              **RESPECTFULLY SUBMITTED,**

                              s/ Leif B. Christman
                              Leif B. Christman (#0070014)
                              **LEIF B. CHRISTMAN, CO.**
                              55 Public Square, Suite 2100
                              Cleveland, Ohio 44113
                              216-241-5019
                              lbchristman@hotmail.com
                              *Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing Sentencing Memorandum has been filed via ECF to the Court's chambers with a copy served via ECF to Kelly L. Galvin, Assistant United States Attorney, this the 4th day of April, 2024.

                              s/Leif B. Christman
                              Leif B. Christman